call the next case. Mr you may proceed. Please the court. We are here certified questions regarding the declaratory judgment action I filed on behalf of Cincinnati Insurance Company regarding the interpretation of uninsured motorist language. It's our position that the language that we're relying upon is not ambiguous and the two sort of the question the two questions that Judge Petrinkaro certified go to that topic. The sole case that the defendant here relies upon is a case called Groschen's which happens to come out of the third district. We I was conscious and aware of that case and that that would be what an opponent would likely rely upon in this context and that's why we chose the third district. That's why we chose Will County to file the case because I thought that the people who wrote the decision in Groschen's would be in the best position to appreciate the distinction between that policy language and our policy language. Our policy language is not ambiguous and it's set forth in a number of places but but here it is and it clearly requires that there is contact with the other vehicle which is the suggested ambiguity. The only ambiguity that's been suggested so far. That's where that's what defense counsel has suggested is the ambiguity exists. In frankness, Judge Petrinkaro was less than clear as to where the ambiguity arose but our language is very clear and so far it says I'm referring now to our brief our opening brief page 4 and we're talking about paragraph F sub 4 C an uninsured motor vehicle I'm sorry let me interrupt myself what we're talking about here is an occurrence wherein it is undisputed there was no contact between the vehicle in which Mr. Pritchett was operating and any other vehicle. As a matter of fact the only person who's testified that there was another vehicle present at all is Mr. Pritchett. Mr. Pritchett says a vehicle swerved into his lane he had to swerve to avoid it caused his truck to tip over. All of the witnesses who were in a position to observe the occurrence say no there was no other vehicle in the vicinity. The closest they put it is six to seven car lengths away so and that it had nothing to do with the manner in which the accident occurred instead they say Mr. Pritchett was operating his vehicle too quickly but what our policy language says is an uninsured F for uninsured motor vehicle means a motor vehicle A and B don't apply we're down to C that is a hit-and-run vehicle and neither the driver nor owner can be identified. We don't have a hit-and-run vehicle it is true that neither the driver nor the owner of another vehicle vehicle can be identified but there is no hit-and-run vehicle. The second sentence is what clearly sets forth the contact requirement and I'll pause here and comment that that is that contact requirement is what was missing in the dairy land policy that was at issue in Groschen's and there's plenty of Illinois cases, Supreme Court cases, talking about the necessity of a physical contact requirement. There are some cases in fact I think there may have been perhaps some language that was too loose suggesting that the contact requirement arose out of section 143 or was some type of judicial gloss requiring that there be physical contact. There are cases that say as flat out that the Illinois insurance code which requires that uninsured motorist coverage be provided requires that there be physical contact with the vehicle. I'll confess to the court that I don't know myself right now whether that's good law or not but it is there and it's not it's not been explicitly overruled. But even if it's not good law our policy makes very clear that contact is required and it's the bolded language on page four of our opening brief the second sentence of the statute's been interpreted to say that's the minimum that has to be required. The statute's been no that's permissible to expand beyond contact. No I don't agree with that I don't in fact I don't think any case has been cited for that proposition with the exception of Groschen's. It does require some contact doesn't have to be with the hit-and-run vehicle it could be with another object that the hit-and-run vehicle caused put in motion. I said that's the requirement of contact. You don't believe the statute requires that? I'm sorry? You don't believe the statute requires contact? I'm not I'm not sure whether the statute requires contact or not. But our policy does. The policy says explicitly in the second sentence of sub C the vehicle must hit or cause an arrow or vehicle and ensure it is occupied. That language could not be clearer. Now let's if you if we may look also at the language that was an issue in Groschen's which is set forth on page 18 of our opening brief and it's not in this language the problem that there is no reference to contact. The problem is by my reckoning that the second sentence of the operative line I'm sorry the first sentence of the operative language is trying to do too much and that when it when it's combined with the second sentence of that same paragraph it is I'm not we're not disputing the group that Groschen's was correctly decided. We're not disputing that this language can be construed as ambiguous. What I would submit is that the first sentence of this of this paragraph in page 18 of our brief is trying to do too much. That it's that it's identifying what is an uninsured motor vehicle and at the same time weaving in a contact requirement but not not with clarity and certainly not with the clarity that is set forth in the Cincinnati policy the second sentence of the Cincinnati policy. Now the ruling from the trial court was that the language of our policy was it was sufficiently similar to the Deerland policy that it must be ambiguous. Again no specificity was given as to where that ambiguity arose. You don't think the sentence that follows that policy if there is no physical contact with the vehicle. That's exactly where I was going. Okay good. So the sentence that reads if there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved. That sentence is the same as what was in the Groschen's policy. Okay but it's also true that our policy again clearly sets forth a contact requirement and does provide this might have been Mr. Justice what you were getting at before it does provide for coverage in the event that there is not contact with the hit-and-run vehicle and it's right in the language. Or cause an object to hit or a vehicle and ensure it is occupying. So there are instances that are contemplated by our language where there would not necessarily be contact between the vehicle in which the claimant is an occupant and the hit-and-run vehicle. And I would submit that that's what that last sentence means. If there is no physical contact with the hit-and-run vehicle, I believe that what that means in the totality of this policy and that's what the case law says we should be doing is looking at the whole of the policy to see whether there is ambiguity. I would submit that that last sentence addresses situations where you do not have contact between the hit-and-run vehicle and the vehicle in which the claimant is an occupant. Was the curb, was that the cause of an object to hit the curb? You know what, the case law is very clear that hitting a curb does not satisfy, there has to be something like, and there are cases that are cited in our brief and I apologize I don't remember the name, where a lug nut as an example came off another vehicle and struck the vehicle in which the claimant was an occupant. And that satisfies the other contact from something that was set in motion from the unidentified motorist. No, the short answer is no. And in frankness, I had that same question when I was analyzing this myself. But contact with the curb cannot satisfy this policy language because it's not, I'm sorry, go ahead, because it's not something that the unidentified vehicle put in motion and that's what the policy language requires. What says cause an object to hit an insured or covered auto or a vehicle an insured is occupying, cause an object to hit? Yes, cause an object to hit. So he's saying that this I think is the green vehicle? Yes. The green vehicle did this and he swerves off, hits the curb, and then everything else went? Yes, sir. Okay. So I'm trying to say, so cause, so it's the hit and run vehicle and neither the driver or owner can be identified, check. And we know the vehicle didn't hit, the unknown person didn't hit it. Correct. It's working, it did something in front of the vehicle. Yes, sir. Then cause an object to hit an insured or covered auto and then asked the further restriction on that is if there is no physical contact with hit and run vehicle, in other words when you don't have hit and run vehicle hitting it, then the facts of the accident must be proved. So I take it you'd have to say that by preponderance of the evidence, the story of the driver that this other thing caused the accident, caused him to go into the curb, would that satisfy this policy? Or would at least be an ambiguity? I thought I was with you up until the last thing you said. At least it would be an ambiguity. Well. Would either satisfy or? No, but I would, it's possible to be in that definition. Well, what your position is, is that the curb is not an object that's been put in motion to hit the insured vehicle. Yes, sir. I mean, if the curb satisfies it, then there's no necessity for any contact at all. So the vehicle here, to read it, the vehicle must cause an object to hit, which means the object must be the actor to hit the vehicle, the insured vehicle. Yes. I mean, it has to be put into motion and whatever that word was. And that's what all the cases say. It can't be a stationary thing that the insured vehicle hits, is what you're saying. Correct. Yes. And I would further submit that that last sentence there, what it does set forth, because, and it's clear in the cases, I'm not making this up, that part of the reason for the contact requirement is fraud prevention. I would submit that the last sentence of sub C here, the purpose of it is to introduce a heightened burden of proof when you don't have an instance of the hit and run vehicle making contact with the vehicle in which the claimant is an occupant. And that that's the purpose of it. And although that language is the same language substantively, if not identically, the same language that's in the last paragraph, the last sentence of the Dairy Land Policy, that that sentence itself does not, and I would submit cannot, make this policy ambiguous. You know, your statement about set in motion, object set in motion, that's not what this says, though. It doesn't say an object set in motion, does it? Well, the case law is very clear that what we're talking about is a continuous sequence of events. And so, no, it doesn't say... But when we're looking at the insurance policy itself, it says the vehicle must hit, and that doesn't happen, or cause an, it doesn't say set in motion, cause an object set in motion to hit, it says cause an object to hit an uninsured or covered auto or vehicle. So, if it causes the truck to do that, is that causing then the truck to go into an object? Well, I guess I would submit that, you know, what the language doesn't, the answer is no. I would say, if the, if it said cause the uninsured vehicle to strike a curb, that would be covered. No, if it said it caused the insured vehicle to strike the curb. I'm sorry, that's what I meant to say. Yeah, you said uninsured. Thank you. That would be covered. But there was nothing about any conduct of this unidentified vehicle that caused any object to strike the vehicle that claims to be insured. Well, they're claiming the actions of the unidentified green vehicle caused the truck to swerve and hit an object. Yes. That is the curb. Right, the curb, the truck hit the curb, the curb didn't hit the truck. So it caused, their action caused the truck to hit an object. Yes, sir. The truck hit the object, the object didn't hit the curb, didn't hit the truck. Right. Object, object is the actor that hits the vehicle. Okay, thank you. Mr. Norum, you may proceed. May it please the Court, Justices. Actually, I'd like to clear something up that we addressed, he addressed earlier in his argument, and that is kind of the implication that this was just Mr. Pritchett's word that this phantom vehicle exists. I direct the Court's attention in review of this case to the testimony of Jeannie Tomasak between, in her deposition, C-417 through C-420. She's an independent witness who's ahead of all this, who looks to her left, she sees the tractor trailer, she sees this other vehicle within five or six car lengths of the tractor trailer, she looks away to her right for five to ten seconds, are you sure? Yep, five to ten seconds. She looks back, the truck's not where it was, the truck's now over in the curb, and the car just keeps going, never stops, never does anything. So the reasonable inference is it puts this car there within close proximity, which is consistent with exactly what Mr. Pritchett testified to, and you'll also find in the record on this curbing issue at C-757, a picture of the curb and evidence that he struck the curb. Yeah, but that, so be it. Understood. So be it, whether there was a vehicle there or not, the opponent's saying it doesn't matter. Well, the problem with that, Judge, is, and counsel didn't want to talk a lot about it, but it's the last sentence of that section of the contract that creates this problem. Now, is that what Groshin's did? Is that how they found an ambiguity? Yes, it is how they found an ambiguity. Just that last sentence, which is the same sentence. Well, Groshin says this, and we just had an exercise a minute ago when you were talking, Justice Carter, about whether or not, well, does the curb have to hit him or does he have to hit the curb? That's a perfect example of why this is ambiguous. Well, does it have to be a reasonable ambiguity? Well, all it has to be is there could be two reasonable interpretations of the language. That has to be reasonable. I certainly think we're actually on a different ambiguity that was raised by Justice Carter on this whole thing with the curb. But the fact of the matter is there's two reasonable interpretations of that language. Therefore, as a matter of law, it's ambiguous. So you're saying Justice Carter's interpretation is reasonable? Yes. OK. But I'm also saying it's further, the problems are further raised when they added this. I always think that. The problem really arises in the last sentence, the same sentence that caused Dairyland Insurance to problem their contract. And Cincinnati hasn't answered or addressed the issue as to why they included that last sentence. When, in fact, this policy was issued in January of 2007, seven years after this court issued the Groshin's decision, why did they include this last sentence? If there is no physical contact with the hit and run vehicle, the facts of the accident must be proved. That clearly can be reasonably interpreted as an exception to the previously stated rule just above it, because they're connected, that if you don't have a physical contact, which is permissible, the Ombudsman Court says that. Groshin says that. The analysis says that. If it's not a physical contact, if it is this fact pattern we have here, vehicle cuts off our vehicle, causes him to strike a curb, and he's seriously injured, that clearly shows an exception that's available under the policy. Your opponent, I take it, is arguing that the last sentence, if there was no physical contact with the hit and run vehicle, that would be the green car, or the green vehicle. Correct. No contact with the green vehicle. There was no contact with the green vehicle. Then you'd have to fit, if the vehicle, you know, if the vehicle didn't hit, so you have to have, cause an object to hit and insure. The problem. So what, so it's, he's saying that it always has to be this other object. The problem with that. And it can never be, the object can't be a curb. The problem with his analysis. Curb is always there, I take it. And I don't, I mean, I don't think we need to get caught up into the curb issue, but I understand what you're saying. Again, his could be a reasonable interpretation, but the problem with this under Illinois insurance laws, there are multiple reasonable interpretations of what this means, and the trial judge, Judge Petrenko, correctly decided this is ambiguous because there are multiple reasonable interpretations. What's that other interpretation that you want to go? We kind of took you down the curb issue. Right. Well, the issue is, look at the sentence. If there is no physical contact with the hit and run vehicle, the facts of the accident must be proved. So I have a question. So what you're saying that last sentence does, is it creates another scenario, not the, it doesn't modify the second scenario in the first sentence? Correct. That's a, that's a reasonable interpretation, and that's the same problem that arose for the Dairyland contract. And if you look at page six of Appley's brief, we put both those provisions in those contracts right next to one another, and it's that exact sentence that creates the problem. The only difference in the last two sentences between the two contracts is the word motor vehicle versus vehicle, and I don't think that's significant here. We know what they're talking about. Otherwise, it's identical language. So it begs the question, why is it included? It only frustrates or creates an exception to what might be an unambiguous contact rule, which we don't disagree. The law of the Supreme Court, Fariga, all those pieces say it's permissible to have an unambiguous contact rule for uninsured motorist coverage. The problem is Cincinnati didn't write an unambiguous contract rule. Your opponent's saying that the, I guess I can't speak for him, but they're saying if you don't have a vehicle hitting, and that last sentence, if there's no physical contact with hit and run vehicle, then there's this heightened thing. You really have to prove there was an accident, some kind of accident. And then, but it still has that cause an object to hit, some other object. And he talked about something coming off of some vehicle. And I believe there's a case of this argument, right? Right. I mean, that's his interpretation. The problem is, again, I keep bringing us back to this. There's other reasonable interpretations of that sentence. And I think our interpretation of that sentence is that in this exact fact pattern, which is a reasonably foreseeable fact pattern on the highways of this state, that a hit and run vehicle may cut a truck off that causes them to hit a curb. That was contracted for and purchased by his employer, in this case, through that Cincinnati policy.  comes into contact with an object, the curb, because of the actions of the hit and run driver, who literally isn't a hit and run driver here. They're just an unidentified driver. But because of those actions, there isn't, quote, unquote, contact. But a serious accident occurs. That's compensable. It's covered under the language Cincinnati put in their policy. And if there's ambiguity to that, it must be strictly construed in favor of coverage. Cincinnati wrote the policy seven years after this court, wrestled with this exact same language that was in Groschen's. Why they did it, look, the appellate court's job isn't to redraft their policy for them, or to be a copy editor, or to take the white out and take that sentence out so it's all clear. It's, here's what we have. Here's what's written in this contract of insurance. Are there more than one reasonable interpretation that applies to the fact pattern we have before you? The fact pattern's really not at issue. If we apply different scenarios, is there coverage? There's clearly coverage under one or more reasonable interpretations of what's written in this policy. Therefore, as a matter of law, well-settled Supreme Court law on this issue, it is ambiguous. There must be coverage. We now have the opportunity to present Mr. Pritchett's testimony. We now have the opportunity to present Ms. Tomasek's testimony. They have the opportunity to present any other witness's testimony. And we can decide if we can prove the facts of our accident. But that's not what for this court to decide. What this court's to decide is the certified question. Is this ambiguous? It is. That's the reason Judge Petrenko found it ambiguous. That's the reason this court should find it ambiguous. So you're saying that, OK, vehicle must hit, or cause an object to hit, the insurer's car, in this case. OK, sure. Right. That would be clear. So you're saying if there is no physical contact with the vehicle, then the facts of the accident must be proved. So you're saying that created the ambiguity right there. Yes. So it says, this policy will cover when there's no physical contact with the vehicle. Correct. Keep in mind, this is all part of, this all comes out of their Illinois uninsured motorist endorsement. It's like a three or four page packet that's attached to the underlying policy. So it's their supplement to define, found in C69 through C72, in their insurance contract, what's covered and what's not covered for an Illinois uninsured motorist claim. And they included that language right in their definition of what an underinsured motor vehicle is. And it's right there, 4C. We've talked about it at length, and it's found in the record. So he has an interpretation of it. It could be a perfectly reasonable interpretation of it. But I believe my interpretation of it's just as reasonable under the facts. Therefore, this court needs to find it ambiguous under the law. It's simple. And your interpretation is what? Is that it allows, since there was no contact between the phantom vehicle, or the green car, and the truck, but it caused his vehicle to move, as he described it, to move and strike the curb and seriously injured him, that because of that, this would allow coverage under that fact scenario, based upon the literal reading of it, as it did in the Dairy Lane contract. They don't want to talk very much about the Dairy Lane contract. But if you look on page 6 and compare the Cincinnati contract and the Dairy Lane contract, substantively, they're virtually identical. Wade, I guess their position is, you're just forgetting about the cause and object to hit. And the plaintiff's vehicle struck the curb. The curb didn't strike the vehicle, is what they're saying. But you're saying that there's, in addition to, there's another scenario for coverage. You have three scenarios, one where the vehicle hits, one where they leave, one where they cause an object to hit, and the third where there is no contact of any kind, then that has to be proven. Correct. The fact has to be proven. Correct. Because it says, if there is no physical contact with the hit and run vehicle, the green car, the facts of the accident must be proved. That is exactly what occurred. And Mr. Hunt is saying, no, there's two. The vehicle either hits or causes the object to hit, in which case the facts must be proven. I understand. So those are the choices. And his could be reasonable. I submit ours is more reasonable. But either way, it's an intrinsic tension between those two things that just can't exist in a contract of insurance. Does it matter if you think yours is more reasonable? No, it doesn't. Or that yours is reasonable? It doesn't matter. It doesn't matter, Justice Holdredge. It only matters if mine is reasonable and under the fact pattern in the black letters written on these pieces of paper. I'd submit it is a reasonable interpretation. And therefore, you must find it's ambiguous. Thank you. Any other questions about that? Thank you, Mr. Norum. Mr. Hunt? I don't think I could have been any clearer when I made my initial comments here. We're not asking you to rewrite anything in the Cincinnati policy. And this argument about the curb, well, I appreciate your question, Justice Carter. And genuinely, the same question occurred to me. This is the first time we're hearing from a defense counsel  So I don't think I could have been any clearer. Well, he hasn't abandoned his other position. I know, but it's nowhere in the pleadings. It's nowhere in the trial record. It's gone with the flow. I understand. I understand. This whiff that somehow this is the language, the Dairyland language that I'm, I guess, afraid to talk about, I don't know where that comes from. I talked about it early on when I said that I thought the problem with their first sentence in that paragraph, the Dairyland language, is that they're trying to do too much. They're trying to identify, rather, define what an uninsured motor vehicle is, and also leave in a contact requirement. And the question that was raised, that there's a third alternative, that there's no contact of any kind, yes. Could you read the Dairyland policy and come to that conclusion? I think you can. That's why we're not disputing the correctness of the conclusion in the Grosjean's case. On the other hand, when you look at the Cincinnati language, which clearly does require contact, it could not require contact any more clearly than the language that's set forth in the second sentence of subparagraph C, we would have to read that language into a nullity to create the ambiguity that defense counsel would submit exists here. Either we read that language into a nullity, or we strike out the entire sentence, or maybe we strike out the clause, or cause an object to hit, so that we're creating a situation. We create an ambiguity that the court has identified, wherein there may be coverage without there having been any contact. No, no, no. Our policy is very clear. The contact is required. If you were to find the Grosjean's policy and disagree with it, if one were to disagree with a panel of this court, that found it to be ambiguous, this policy, the Daryland policy, would be covering this incident, wouldn't it? I mean, that would be a reasonable view. Well, I'm sorry, if Grosjean's is correctly decided, is it? No, if it's not. If it's not correctly decided? Yeah, I mean, there seems to be some who might say that the Daryland policy is not ambiguous. I would, I agree. And if that were the case, the Daryland policy would be a simple, it wouldn't be much of a deck action here, because this incident, the facts, would be covered under Daryland. Well. Because under your view, that last sentence just exists independently and says if there's no contact. In the Daryland. The vehicle, the facts must be proved. The last sentence in the Daryland policy. Right. Yes. Actually allows a clear no contact generalized recovery. It leaves open that possibility. Right, but you're saying your no contact language, though being the same, is. No, no, no, I don't think, no. Our no contact language is different. It's decidedly different. Because it's set forth, it's set forth in a sentence, the vehicle must hit or cause an object to hit. With the hit and run vehicle. Yes, so, and I know that you've heard that from the defense counsel, that it's substantively identical. It's not. Our language is very clear. Theirs is not. And that's why, and that was my criticism of the Daryland policy language, is that they're trying to define an uninsured vehicle at the same time they're talking about the contact. If they had taken the time to specifically say contact is required, as in the fashion that the Cincinnati policy does, then the outcome there may have been different. The policy that I have to defend is the Cincinnati policy. And the question that was posed to you as to why that last sentence was included, my surmise, is the very reason that I said. And that is, that there's a heightened burden of proof when you have this increased likelihood of fraud. And that is not, I'm sorry. I'm having some difficulty understanding that aspect because the insurance company, you're not gonna cover anything unless there's proof that there was an accident. And there's proof in every circumstance, whether the hit and run vehicle did it or some other vehicle did it, you always have to have proof. And when you say there's a heightened proof, you know, why is that last sentence included? You always have to prove there's an accident to get some coverage. Well, you know, that's interesting. The policy doesn't say that. It says, if there's no physical contact with the hit and run vehicle, the facts of the accident must be proved. And we're not here to talk about what happens when there is contact. What we're here to talk about is what happens when there is no contact. So if there's no contact, nobody's gonna prove that? I mean, if there is contact, nobody's gonna prove that? Well, respectfully, that's not before us. Yeah, right. Counsel, you have one minute. Any other questions? If not, thank you, Mr. Henn. All right, thank you. You're done? You have a minute, okay. Thank you. All right. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you as soon as possible. Right now, we will stand in recess until nine o'clock. All rise. And thanks for your patience waiting here all day.